*J. W. Brown, Randall & Ramsey,* for appellant.

*S. M. Burdett, Anderson & Herndon,* for appellee.

———————

JAS. P. MILLER, ET AL. *v.* JULIA PAYNE, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—296, 307.]

**No Reversal Where Judgment is Not Palpably Against Evidence.**
Where the issues in a case are purely legal and involve questions of fact, the Court of Appeals will not disturb the judgment of the trial court unless palpably against the evidence.

**Statute of Frauds.**
A promise of the wife to pay the debt of her husband, not in writing, is not binding on her because of the provisions of the statute of frauds.

**Want of Consideration.**

Where a son has forged a note and the holder of the note seeks to have him arrested for the crime, and the mother to prevent his arrest executes a note for the amount of the forged note, such note is destitute of any valuable consderation and has none of the elements of a binding contract, and will not be enforced.

## APPEAL FROM ADAIR CIRCUIT COURT.

October 8, 1885.

Opinion by Judge Pryor:

This voluminous record containing several hundred pages of depositions made up mostly of immaterial matter has been carefully read with a view of passing on the questions of fact raised by the several issues between the parties. In the first place the issues made in nearly all the appeals arise on the plea of non est factum to various notes alleged to have been executed by Mrs. Payne and her son, Miller H. Payne.

The issues being purely legal and involving questions of fact, this court will not disturb the judgment of the court below, unless palpably against the testimony. It is not pretended that the appellee, Mrs. Payne, signed any of the notes, but the attempt to create the liability is grounded on the fact that the mother and son were partners, and if not that the son transacted the business of the mother and by reason of this agency was authorized to execute the notes in controversy. We have been unable to ascertain from the proof the existence of any partnership between the two, or any agency from which could be implied the power or authority of the son to bind the mother for their debts.

The appellee owned some two hundred ten acres of land upon which she lived, near the town of Columbia, and at the death of her husband it was cultivated partly by her son and some of it occupied by tenants. The control of the farm and the agency of the son was only such as necessarily would exist between the two after the death of the father, and from which no such agency arises, express or implied, as would authorize the son to execute notes in discharge of his own obligation with the name of his mother signed by him as an obligor without her direction, and if as surety the authority must have been in writing.

42

The son cultivated a part of the land and the mother the remainder, or rented it to others, and finally the son agreed to run the farm or the greater portion of it and support the mother. Mrs. Payne seems to have been a close and economical woman, this record evidencing the fact that when she made purchases she either paid the cash or exchanged the results of her own labor or the products of her farm for the articles obtained. No credit was asked by the mother and none given, and the indebtedness of the son was not only outside of the agency that he might have had in looking over or superintending the farm, but was for debts of the son's own creation, and for his own use. There is nothing in this record showing that the mother was to supply the tenants on the farm or that the son had the power to place her name upon bank notes or any other paper by reason of the relation between them. The son was the only child, and a reckless, extravagant dissipated boy, having before reaching the age of maturity an association with bad men and women that should have suggested to these appellants, who are business men, the danger of accepting his paper in discharge of an indebtedness that his mother knew nothing of, and about which she was never consulted, either by the son or by the son's creditors. He executed the note for $500 to the appellant, Miller, with his mother's name on the paper and that of William Walker. He had no authority to sign the name of either his mother or that of Walker, and Miller, ascertaining that fact, demanded of his mother an obligation by which he would be fully indemnified, which was given by the mother, the principal consideration being that no prosecution could be had against the son for forgery.

The exposure of Miller in this case seems to have awakened the appellants to a security of their rights, and the attempt was then made to show the existence of a partnership or agency with a view of making the mother liable for the reckless extravagance of the son. She was a nervous, delicate, consumptive woman, and easily excited and alarmed, and after the transaction with Miller, in the desire for the safety of her only child, she signed, in one instance at least, a paper stating that she had authorized her son to sign her name. This was to the Bradshaw and Strange note. She had prior to the signing of this written statement declined to pay any part of the debt because she had never signed the paper and received no consideration for it. That note was made up of two

other notes, both of which when separate she declined to pay or arrange in any way, but when united and placed in one note she gives a writing stating that she authorized her son to sign her name. She was not willing to pay either of the small notes, but when united she was willing to pay all. If she ever agreed to pay, it was only as surety; and the subsequent writing acknowledging her liability can not be enforced as to a ratification because based upon no consideration.

Nor is the appellee liable for the debt of her husband alleged to have been assumed by her. In the first place there is no consideration alleged by Walker for this promise. It is not alleged that the estate of her husband had been released, or that there was any estate left by him to pay this debt. It was simply a promise by the wife to pay the debt of the husband. The promise is not in writing and therefore not binding on the wife. The note evidencing this liability is like all the rest signed by the son. All the appeals except that of Miller invoked similar questions or purely questions of fact arising upon legal issues, and with the evidence conflicting, and in our opinion preponderating for the appellee the judgment below must stand.

It is manifest from this entire record that the appellants were trusting to the prospective inheritance by this profligate young man of all his mother's possessions, and were giving the credit to the son and not the mother. The assault on the appellee's character for truth is supported by as flimsy testimony as it is possible to present. Some six or seven of her neighbors speak of their want of confidence in her statements on oath, based on an unfriendly feeling that originated from her refusal to leave her keys with the wife of one of her tenants, another that she refused to pay certain debts. The reason given for such attacks upon the character of a witness are entitled to little if any consideration, and only conduce to strengthen the conclusion that these appellants are basing their right of recovery upon the anxiety of the mother for the protection and welfare of a reckless child.

As to the appellant, Miller, it is plain he has no standing in a court of equity; still, if the other witnesses are entitled to recover upon the ground of partnership or of agency we perceive no reason why the claim of this appellant should not be included. Miller loaned this money to the son upon a note to which the names of

his mother and Walker were affixed as sureties without any authority. After this was done the mother, for the protection of her son and to save him from a prosecution, executed to Miller her own note and gave to him a mortgage on the land. This was done at the instance of the appellant, Miller, and while the statements of the appellant and the appellee, Mrs. Payne, are conflicting, the testimony of the assignee, Jones, sustains the statements of Mrs. Payne, that the principal and moving consideration for the execution of the note and mortgage was that he, Miller, would not prosecute her son. He visited the house of the appellees for the purpose of having young Payne arrested, and stated to Mrs. Payne that if it was not fixed up he would have him arrested before night. How natural the statements when taken in connection with what Miller says was the object of his visit. It is such a contract as no chancellor should enforce. It is not only against public policy, but destitute of any valuable consideration. It lacks all the elements of a binding contract, and besides is made with one whose physical system is almost wasted away by disease and at a time when her mental agony over the unfortunate condition of her only child prevented her from resisting the importunities of her son's creditor.

The evidence of the boy's crime was conclusive, and that fact was presented to the mother as a reason for signing the obligation. This contract will not be enforced. The judgments of the chancellor below on the entire case is affirmed.

Judgment *affirmed.*

*James Garnett, J. F. Montgomery, Hindman & Sampson, for* appellants.

*C. M. Sallee, W. W. Jones and H. C. Baker, for appellees.*
[Cited, *Rupple v. Kissel,* 24 Ky. L. 2372, 74 S. W. 220.]